UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| **BRENDA RACER,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No. 1:23-CV-00058-SNLJ |
| | ) |
| **KILOLO KIJAKAZI,** | ) |
| **Acting Commissioner of the Social** | ) |
| **Security Administration,** | ) |
| | ) |
| **Defendant.** | ) |

## **MEMORANDUM AND ORDER**

Plaintiff Brenda Racer applied for disability insurance benefits under Title II of the Social Security Act. Her application was denied, and she appealed the denial to an administrative law judge ("ALJ"). After a hearing, the ALJ found she was not disabled, and plaintiff now seeks judicial review. [Doc. 16]. The defendant filed a response brief, but no reply was filed, and the time for doing so has expired. As discussed below, the Commissioner's decision is supported by substantial evidence on the record as a whole and is affirmed.

**I.    Background**

Plaintiff Racer was born in 1972 and was 47 years old when she alleges she became disabled. At her attorney's advice at the ALJ hearing on March 24, 2022, plaintiff amended the alleged onset date of disability to August 27, 2020. Plaintiff was 49 as of the date last insured. She has a high school education. [Doc. 16-3].

On June 2, 2022, the ALJ issued her opinion. The ALJ's decision recognized that

1

plaintiff had medically determinable impairments, but she remained able to perform other work existing in significant numbers in the national economy. [Doc. 16-3]. Accordingly, the ALJ found that plaintiff was not disabled from August 27, 2020, through her December 31, 2021 date last insured. [Doc. 16-3].

## II.     Disability Determination—Five Steps

A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner follows a five-step sequential process when evaluating whether the claimant has a disability. 20 C.F.R. §§ 404.1520(a)(1), 416.920(a)(1). First, the Commissioner considers the claimant's work activity. If the claimant is engaged in substantial gainful activity, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003); *see also* 20 C.F.R. §§ 404.1520(a)(4)(ii),

2

416.920(a)(4)(ii). Severe impairments are those that significantly limit an individual's ability to perform basic work activities and must last or be expected to last at a "severe" level for a continuous period of 12 months or be expected to result in death. [Doc. 16-3]; 20 C.F.R. §§ 404.1520(c), 404.1509; SSR 85-28. "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 20 C.F.R. §§ 404.1520(c), 404.1520a(d), 416.920(c), 416.920a(d).

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), (d); 416.920(a)(3)(iii), (d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the "residual functional capacity" ("RFC") to perform his or her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(5)(i), 416.920(a)(4)(iv), 416.945(a)(5)(i). An RFC is "defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotations omitted); *see also* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). While an RFC must be based "on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," an RFC is

3

nonetheless an "administrative assessment"—not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831F.3d 1015, 1020 (8th Cir. 2016).  Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).  Ultimately, the claimant is responsible for providing evidence relating to his RFC, and the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources."  20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).  If, upon the findings of the ALJ, it is determined the claimant retains the RFC to perform past relevant work, he or she is not disabled.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production to show the claimant maintains the RFC to perform work that exists in significant numbers in the national economy shifts to the Commissioner.  *See Bladow v. Apfel*, 205 F.3d 356, 358–59, n.5 (8th Cir. 2000); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)( v).  If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled.  *Id.*  At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant.  *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

4

### III. The ALJ's Decision

At Step One, the ALJ found plaintiff met the insured status requirements through December 31, 2021, and that she had not engaged in substantial gainful activity since the amended alleged onset date of August 27, 2020. [Doc. 16-3].

At Step Two, the ALJ found plaintiff suffered from the following severe impairments: degenerative disc disease of the cervical spine; saphenofemoral venous reflux with bilateral leg edema; tobacco dependence; vertigo; chronic headache/migraine; diastolic dysfunction; neurologic condition of cryptogenic etiology; major depressive disorder; and generalized anxiety disorder. [Doc. 16-3]; *see* 20 C.F.R. § 404.1520(c). The ALJ found that the following conditions were not severe: gastroesophageal reflux disease, restless leg syndrome, and obesity. [Doc. 16-3]. These conditions did not substantially affect plaintiff's ability to perform basic work activities. *Id*. Because non-severe conditions may combine with severe conditions to affect functioning, the ALJ duly considered them as well. *Id*.

At Step Three, the ALJ found that the severe impairment did not meet or equal one of the existing impairments in the regulations. [Doc. 16-3]. Regarding the disc disorder, the ALJ considered listing 1.15, and found that there was "no evidence that the nerve roots were compromised in a manner causing radicular symptoms of pain, paresthesia, or muscle fatigue along with signs of muscle weakness and irritation, tension or compression." *Id*. The ALJ found no evidence that an assistive device that involved the use of both or one upper extremity was required. *Id*.

The ALJ considered Listing 4.04 regarding ischemic heart disease. *Id*. The ALJ

noted that "the record contain[ed] no medical findings which [met] the criteria of this listing." [Doc. 16-3].

The ALJ further considered Listing 4.11 regarding chronic venous insufficiency and found once again that the medical record failed to demonstrate the requirements. *Id*. Likewise, "the claimant did not have intermittent claudication together with the necessary findings on arteriogram or doppler studies as required by Listing 4.12" for peripheral arterial disease. *Id*.

There is no particular listing for headaches, so the ALJ considered SSR 19-4p. *Id*. Once again, the ALJ found that plaintiff's condition did not meet the criteria of any specific listing both "along or in combination with any other medically determinable impairment." *Id*.

The ALJ considered the testimony of plaintiff's representative who argued both in a pre-hearing brief and at hearing that her impairments met Listings 12.04 and 12.06. *Id*. The ALJ continued, however that she "did not find that the severity of the claimant's mental impairments, considered singly and in combination, met or medically equaled the criteria of listings 12.04 and 12.06 prior to the date last insured." *Id*. Although plaintiff struggled to remember to take her medications, "providers routinely described her memory as fair to adequate." *Id*. She could recall information regarding her health and participate appropriately at the hearing. Balancing this evidence, the ALJ concluded that "claimant had no more than a moderate limitation in this area of mental functioning through the date last insured." *Id*.

The ALJ evaluated plaintiff according to "Paragraph B" criteria and found she had

6

moderate limitations when interacting with coworkers due to difficulty concentrating.  *Id*.  "Providers," however, "routinely observed fair to adequate concentration," so the ALJ concluded that this was no more than a moderate limitation in mental functioning.  [Doc. 16-3].  Likewise, the plaintiff's difficulties with managing herself were also deemed to be moderate based on her ability to maintain personal hygiene and awareness of normal hazards.  *Id*.  As a result, the "'Paragraph B' criteria were not satisfied."  *Id*.

The ALJ also found that plaintiff did not meet the "Paragraph C" criteria because she regularly presented for treatment without requiring "substantial psychosocial supports." [Doc. 16-3].  Moreover, plaintiff was able to live on her own without being referred to a highly supportive living environment, was not in an intensive therapy program, and was not hospitalized for inpatient psychiatric treatment or care for any extended time period.  *Id*.

As a result, the ALJ concluded that "the claimant had the residual functional capacity to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), except she could not climb ladders, ropes, or scaffolds; she could, however, occasionally climb ramps and stairs." [Doc. 16-3].  Moreover, she had the concentration to perform "simple, routine tasks" as well as remembering work procedures.  She needed to work in an environment that allowed for a flexible and goal-oriented pace.  *Id*.

Although plaintiff was unable to return to her previous work as a Hospital Admitting Clerk, "there were jobs that existed in significant numbers in the national economy that claimant could have performed."  *Id*.  Relying on testimony from a vocational expert, the ALJ determined that plaintiff would be capable of working as a sorter, addresser, and document preparer.  *Id*.  The ALJ also believed plaintiff would be capable of making this

7

career transition, and thus she found plaintiff "not disabled." *Id*.

## IV.  Standard of Review

The Court must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole. 42 U.S.C. §§ 405(g); 1383(c)(3). Substantial evidence is less than a preponderance of the evidence but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). The Supreme Court has found that substantial evidence is "more than a mere scintilla" of evidence but is still only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587, U.S. 97, 97 (2019).

The "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the [Commissioner's] findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (alteration in original) (quoting *Gavin v. Heckler*, 811 F.2d 1195, 1199 (8th Cir. 1987)). The Court must also consider any evidence that fairly detracts from the Commissioner's decision. *Id*. "[I]f there is substantial evidence on the record as a whole, [the Court] must affirm the administrative decision, even if the record could also have supported an opposite decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992). In reviewing whether the ALJ's decision was supported by substantial evidence, this Court does not substitute its own judgment for that of the ALJ—even if different conclusions could be drawn from the evidence, and even if this Court may have reached a different outcome. *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010).

## V.  Discussion

Plaintiff presents three reasons for remand. First, she argues that the ALJ improperly

8

found that her mental impairments did not meet or equal the criteria of Listings 12.04 and 12.06.  Second, plaintiff alleges that she is "unable to perform the basic mental demands of unskilled work as described in SSR 85-15," and the vocational expert did not account for her specific needs in his evaluation.  Third, plaintiff believes that the ALJ failed to give appropriate weight to Heidi Allen's testimony.  [Doc. 11, Doc. 14].

The ALJ found that plaintiff failed to meet the requirements found in listings 12.04 and 12.06.  [Doc. 16-3].  Paragraph B listings for 12.04 and 12.06 evaluate four functional areas: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself.  [Doc. 16-3].  These skills are scored on a scale of none, mild, moderate, marked, and extreme.  [Doc. 14].  The ALJ concluded plaintiff had moderate limitations in these four areas, meaning plaintiff still functioned fairly well.  [Doc. 16-3]; 20 C.F.R. § 404(p), App. 1 § 12.00(F)(2); *see* [Doc. 14].  This decision was made, because, as noted above, the ALJ found that plaintiff was still capable of performing sedentary and repetitive work.  [Doc. 16-3].

Plaintiff does not deny that she was still capable of performing such work, but instead asks this court to find that such work is not consistent with a moderate impairment.  *See Stewart v. Astrue*, 561 F.3d 679 (7th Cir. 2009).  The ALJ, however, defined an <u>extreme limitation</u> as "the <u>inability</u> to function independently, appropriately, or effectively, and on a sustained basis."  Comparatively, a <u>marked limitation</u> is merely a "<u>seriously limited</u> ability to function independently, appropriately, or effectively on a sustained basis." [Doc. 16-3] (emphasis added).

9

Substantial evidence supports this court finding plaintiff's impairments to be moderate, affirming the ALJ's decision.  The ALJ relied on consultations from a vocational expert who testified to various alternative jobs that plaintiff could have taken, including working as a sorter, addresser, or a document preparer.  There are a combined total of 32,300 estimated positions in these fields in the national economy. [Doc. 16-3].  Moreover, despite alleging memory concerns, neuropsychological testing found average memory retention, and plaintiff was able to appear at the hearing and attend appointments without difficulty remembering events and incidents. *Id*.; [Doc. 14].  Likewise, despite plaintiff alleging severe difficulties interacting with others, the ALJ found merely a moderate limitation.  Plaintiff was able to interact with friends and family; she could go out alone to the store a few times a week; and she was even able to host an Easter dinner in April 2021.  Providers also found her easy to work with.  [Doc. 16-3; *see* Doc. 14].  This does not reflect an <u>inability</u> to perform these functions, even if plaintiff did so with difficulty.

In response to plaintiff's second allegation that she is unable to perform the tasks necessary for unskilled labor, the ALJ found that so long as the work was sedentary and had limited interactions with others, she would be capable of doing task-oriented work.  [Doc. 16-3].  Plaintiff states, however, that if she is indeed "moderately impaired" when it comes to taking direction, making judgments, responding appropriately to colleagues, and dealing with changes at work, then the vocational expert should have accounted for these circumstances in recommending the various jobs available in the national economy.  [Doc. 11].  The Supreme Court, however, has said that "a vocational expert's testimony may count as substantial evidence even when unaccompanied by supporting data." *Biestek*, 587 U.S. at

10

105. This Court, therefore, will uphold the ALJ's reliance on the vocational expert.

Finally, plaintiff claims that the ALJ did not give appropriate weight to the testimony of L.C.S.W. Heidi Allen's opinions. [Doc. 11, Doc. 14]. Defendant aptly notes that although plaintiff cited 20 C.F.R. §§ 404.1520c(a), 404.1520c(b)(2), 404.1520c(c)(3)-(5), 416.920c(a), 416.920c(b)(2), 416.920c(3)-(5), and 82 Fed. Reg. 5844, she failed to demonstrate how it was misapplied in her case. [Doc. 14]. Instead, the transcript indicates that the ALJ clearly considered Ms. Allen's testimony and weighed it alongside the testimonies of Drs. Ross, Schnell, Ahmed, Brandhorst, and Sullivan. The ALJ specifically described Ms. Allen's testimony: "to the extent Ms. Allen's correspondence can be considered an opinion, it is not persuasive as it is neither supported by nor consistent with the medical evidence and other evidence of record." [Doc. 16-3]. This statement comes amidst analyzing the supportability of the other professionals' opinions. Regulations require that courts give objectively supported opinions more weight. 20 C.F.R. §§ 404.1529; 404.1520; SSR 16-3p. As the ALJ acknowledged, there is little to support Ms. Allen's opinions because they are largely based on her subjective observations. Ms. Allen offers virtually no data to support her claims. [Doc 16 at 23-24, Doc. 16-3 at 360-362, 802-807, 842-856]. Thus, substantial evidence supports finding that the ALJ properly weighed these opinions alongside the testimonies of the other experts, who provided more objective data to support their opinions.

## VI.   Conclusion

This Court's review is limited to determining whether the ALJ's findings are based on correct legal standards and supported by substantial evidence. It does not substitute its

11

own judgment for that of the ALJ. *McNamara*, 590 F.3d at 610. Having found the ALJ's conclusions were supported by substantial evidence, and that legal standards were correctly applied, this Court affirms the ALJ's decision.

Accordingly,

**IT IS HEREBY ORDERED** that the Commissioner's decision is **AFFIRMED**, and plaintiff's complaint [Doc. 1] is **DISMISSED with prejudice**. A separate judgment will accompany this Order.

Dated this 28th day of October, 2024.

_____
STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE